# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 12-329

**LOUIS FOX, ET AL.**

**VERSUS**

**THE SHAW GROUP, ET AL.**

**\*\*\*\*\*\*\*\*\***
## APPEAL FROM THE
## NINTH JUDICIAL DISTRICT COURT
## PARISH OF RAPIDES, DOCKET NO. 235,492-G
## HONORABLE HARRY F. RANDOW, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Kenneth W. DeJean
Law Offices of Kenneth W. DeJean
417 West University Avenue
Lafayette, LA  70506
(337) 235-5294
**ATTORNEY FOR PLAINTIFFS/APPELLANTS**
    Louis Fox and Jo Ann Fox

James A. Bolen, Jr.
Patricia K. Penny
Bolen, Parker, Brenner, Lee & Engelsman, Ltd., APLC
709 Versailles Boulevard
P.O. Box 11590
Alexandria, LA  71315-1590
(318) 445-8236
**ATTORNEY FOR DEFENDANTS/APPELLEES**
    CLECO Power, LLC and Shaw Constructors, Inc.

**COOKS, Judge.**

Plaintiffs appeal the judgment of the trial court granting the Defendants' motion for summary judgment declaring that Louis Fox was the statutory employee of Defendants, Shaw Constructors, Inc. and CLECO Power, L.L.C. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On August 12, 2008, Louis Fox, while working inside a cyclone tower at the Rodemacher Power Station, allegedly sustained an injury when an object fell from above, striking him in the head and neck area. On the date of the accident, Mr. Fox was employed by Foster Wheeler Constructors, Inc. as a refractory gunner. CLECO Power, L.L.C. is the owner of the Rodemacher Power Station.

On August 1, 2005, CLECO Power entered into a written contract with Shaw Constructors, Inc. (Shaw), wherein Shaw would act as the general contractor in the construction of Rodemacher Unit 3, which included the cyclone tower where Mr. Fox alleged he suffered his injuries. On October 1, 2005, Shaw and Stone & Webster, Inc. (Stone), entered into an agreement whereby Stone would provide all of the engineering and procurement services required by the August 1, 2005 contract between Shaw and CLECO Power. In February 2006, Stone, described in the general contract between CLECO Power and Shaw as an "affiliate" of Shaw, entered into a purchase order agreement with Foster Wheeler North America Corp. (Foster Wheeler) for the sale of boiler units and the installation of said units at the Rodemacher Unit 3 project. Mr. Fox was employed directly by Foster Wheeler as a refractory gunner and was working in the cyclone tower at the Rodemacher Power Station when the alleged injury occurred.

Fox and his wife, Jo Ann, filed a petition for personal injuries against several defendants: Shaw, CLECO Power, L.L.C., CLECO Corporation, Rodemacher

Power Station, Louisiana Energy Production, LLC, Lafayette Consolidated Government d/b/a Lafayette Utilities Systems, and Turner Industries (who Plaintiffs alleged had the duty to inspect the cyclone tower). On September 2, 2009, the CLECO defendants and Shaw filed an answer asserting the affirmative defense that they were statutory employers of Mr. Fox. They also filed a dilatory exception of vagueness and a motion to strike. On November 4, 2009, a joint motion was filed to dismiss specific paragraphs of Plaintiffs' petition and withdraw the exception of vagueness and motion to strike. The joint motion was granted.

On November 20, 2009, the CLECO defendants and Rodemacher Power Station filed a Motion for Summary Judgment alleging there was no factual or legal basis on which to assert liability against them. The trial court denied summary judgment as to CLECO Power L.L.C., but summary judgment was granted as to CLECO Corporation and Rodemacher Power Station.

On July 12, 2010, CLECO Power, L.L.C. filed a second motion for summary judgment contending it bore no responsibility for the injuries sustained by Mr. Fox, as any and all ownership responsibilities for the construction site were delegated to Shaw. That motion for summary judgment was denied.

CLECO Power and Shaw filed a motion for summary judgment requesting the court find (1) that there is no factual or legal basis on which to assert liability against them, and (2) that CLECO Power and Shaw are the statutory employers of Mr. Fox and thus immune from any tort claim brought by him. On September 19, 2011, a hearing on the motion was held and the matter taken under advisement. The trial court rendered judgment finding there was no genuine issue of material fact as to the classification of CLECO Power and Shaw as statutory employers of Mr. Fox. Finding CLECO Power and Shaw were statutory employers of Mr. Fox, it rendered the issue of liability moot as workers' compensation was Mr. Fox's

2

exclusive remedy against those two defendants.[1]  This appeal followed, and Plaintiffs now allege neither Shaw nor CLECO Power is entitled under the law to classification as the statutory employer of Mr. Fox.

## ANALYSIS

In *Miller v. Martin*, 02-670, p. 5 (La. 1/28/03), 838 So.2d 761, 764, our supreme court reiterated the standard applicable to appellate review of cases decided by summary judgment stating:

> Appellate review of the granting of a motion for summary judgment is *de novo*.  *Schroeder v. Bd. of Sup'rs of La. State Univ.*, 591 So.2d 342 (La.1991).  A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law."  La.[Code Civ.P.] art. 966(B).  A court may grant summary judgment that is "dispositive of a particular issue, theory of recovery, cause of action or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case."  La.[Code Civ.P.] art. 966(E).

The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact.  *Prime Income Asset Management, Inc. v. Tauzin*, 07-1380 (La.App. 3 Cir. 4/30/08), 981 So.2d 897.  "[S]ummary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action," except certain domestic actions.  La.Code Civ.P. art. 966(A)(2).  "The procedure is favored and shall be construed to accomplish these ends."  *Id*.

Louisiana Revised Statutes 23:1031 provides for workers' compensation benefits to an employee who is injured by an accident "arising out of" and "in the course of" his employment.  *Smith v. Continental Casualty Company*, 98-2896 (La.App. 1 Cir. 2/18/00), 752 So.2d 381, *writ denied*, 00-0789 (La. 4/28/00), 760 So.2d 1183.  Under certain circumstances, an owner or principal can be held to be

---

[1] The Plaintiffs' personal injury claims and lawsuit continue against Turner Industries, Inc., who Plaintiffs allege had the responsibility of inspecting the cyclone tower where Mr. Fox was injured.

a statutory employer, and thus liable to pay workers' compensation to an employee of a contractor he engages. Under such circumstances, workers' compensation is the exclusive remedy of the contractor's employee held to be a statutory employee of the principal, and the principal is immune from tort liability. La.R.S. 23:1032. These circumstances are set forth in La.R.S. 23:1061.

"The issue of statutory employment status is a mixed question of law and fact." *Dominio v. Folger Coffee Co.*, 09-1278, p. 10 (La.App. 4 Cir. 2/10/10), 32 So.3d 955, 961, *writ denied*, 10-570 (La. 5/21/10), 36 So.3d 232. The doctrine of "statutory employer" is codified in La.R.S. 23:1061, amended in 1997, to provide that when a valid written contract recognizes the existence of a statutory employer relationship, a rebuttable presumption of a statutory relationship is created. *St. Angelo v. United Scaffolding, Inc./X-Serv., Inc.*, 09-1420 (La.App. 4 Cir. 5/19/10), 40 So.3d 365, *writ denied*, 10-1412 (La. 9/24/10), 45 So.3d 1082. La.R.S. 23:1061 provides as follows:

> A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
>
> (2) A statutory employer relationship shall exist whenever the services

4

or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.

(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

There are two instances in which a statutory relationship will be found, thus holding the statutory employer only liable for workers' compensation benefits: (1) being a principal in the middle of two contracts, referred to as the "two-contract" theory, and (2) the existence of a written contract recognizing the principal as the statutory employer. *Prejean v. Maint. Enters., Inc.*, 08-364 (La.App. 4 Cir. 3/25/09), 8 So.3d 766, *writ denied*, 09-892 (La. 6/26/09), 11 So.3d 496. In its brief before this Court, appellees, noting the lack of any provision in the Purchase Order between Stone and Foster Wheeler, the direct employer in this case, stated:

The absence of such an explicit contractual provision merely indicates the inapplicability of La.R.S. 23:1061*(A)(3)* to the Foster Wheeler situation, and does not affect the applicability of *(A)(2)*. (Emphasis in the original.)

This would seem to indicate Shaw is basing its claim of statutory employer immunity solely on the "two-contract" theory set forth in La.R.S. 23:1061(A)(2), which was the basis the trial court found for finding Shaw was the statutory

5

employer of Mr. Fox. The "two-contract" theory "applies when: (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed." *Daigle v. McGee Backhoe & Dozer Serv.*, 08-1183, p. 6 (La.App. 5 Cir. 4/28/09), 16 So.3d 4, 7, *writ denied*, 09-1372 (La.10/2/09), 18 So.3d 113 (citing *Beddingfield v. Standard Constr. Co.*, 560 So.2d 490 (La.App. 1 Cir.1990)).

Initially, we note CLECO Power's classification as a statutory employer of Mr. Fox is dependent upon whether Shaw is classified as a statutory employer of Mr. Fox. If Shaw is determined to be the statutory employer of Mr. Fox at the time of the accident, under the terms of the contract between CLECO Power and Shaw, CLECO Power is also recognized as a statutory employer of Mr. Fox under La.R.S. 23:1061(A)(3).

There is no question the first two requirements for application of the "two-contract" theory were met. Shaw entered into a contract with CLECO Power and, pursuant to that general contract, work was performed. The question concerns the third requirement, that in order for the principal (Shaw) to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed. Shaw argues, in order to fulfill its contractual relationship with CLECO Power, it entered into a subcontract directly with Foster Wheeler. The trial court found this was the case, and gave the following written reasons for finding Shaw was the statutory employer of Mr. Fox:

> The court concludes, after reviewing the purchase order and the Corporate Guaranty, that Foster Wheeler contracted with Shaw. The court reaches this conclusion based on the section of the corporate guaranty in which Foster Wheeler acknowledges Stone as Shaw's agent. That portion of the document reads: "Whereas, Purchaser (Stone) as agent for contractor (Shaw) and FWNA (Foster Wheeler) have entered into that certain purchase order for two CFB Boilers."

This provision is clear that Stone was acting on behalf and for the benefit of Shaw, as the principal of Stone. In fact all the guaranties and rights given by Foster Wheeler are specifically for the benefit of the Contractor, which is Shaw.

The guaranty also provides that all rights, obligations and remedies shall be interpreted and governed in accordance with Louisiana laws. The court finds this provision relevant as the Louisiana Civil Code governs actions taken by a [mandatary] acting on behalf of the principal. The court opines that articles 3016, 3020 and 3022 of the Louisiana Civil Code control in this issue. Louisiana Civil Code Article 3016 states that a [mandatary] who contracts in the name of the principal within the limits of his authority does not bind himself personally for the performance of the contract. Article 3020 states that when the [mandatary] is acting within the limits of his authority the principal is bound to perform the contract the [mandatary] makes with a third person. Article 3022 provides that a third person with whom a [mandatary] contracts in the name of the principal, or in his own name as [mandatary], is bound to the principal for the performance of the contract. These articles clearly articulate that when a [mandatary] enters into a contract with a third person in the name of the principal and within the limits of his authority, the contract binds the principal to the third person and the third person to the principal, regardless of whether the contract is in the name of the principal or the [mandatary]. Thus the purchase order executed between Stone and Foster Wheeler obligated only Foster Wheeler and Shaw. Therefore Shaw is the statutory employer of Mr. Fox, Foster Wheeler's direct employee.

Plaintiffs argued Shaw entered into a subcontract with Stone, who then subcontracted part of its work to Foster Wheeler. According to Plaintiffs, this breached the required contractual chain necessary for application of the "two-contract" theory, and "Shaw has failed to establish that it, as the alleged principal, stands in the middle of the two contracts." Therefore, Plaintiffs contend Shaw cannot be deemed to be the statutory employer of Mr. Fox.

Shaw counters that, even if it were determined it was Stone and not Shaw that entered into the subcontract with Foster Wheeler, Shaw still is entitled under La.R.S. 23:1061(A)(2) to classification as a statutory employer because it entered into a subcontract pursuant to fulfilling its general contract with CLECO Power.

The contractual path of the parties begins with the general contract between

7

CLECO Power and Shaw for the construction of the Rodemacher Unit 3. Specifically, Article XXVI, section 26.2 in the Contract between CLECO Power and Shaw for Engineering, Procurement and Construction of the Rodemacher Unit 3, dated August 1, 2005, states:

> Contractor shall be an independent contractor with respect to the Work to be performed hereunder. Contractor, its Subcontractors, Vendors or the employees of any of them, shall not be deemed to be servants, employees or agents of Owner. Owner is specifically recognized as a statutory employer of all employees of Contractor, whether direct employees or statutory employees, who are performing work under this Contract, as contemplated by LSA-R.S. 23:1061 A.

On October 1, 2005, Shaw entered into a contract with Stone, wherein Stone agreed to provide Shaw (the Contractor) with "all of the engineering and procurement services ("Services") described in the contract dated August 1, 2005 (the "Prime Contract") between Contractor and CLECO Power, LLC ("Owner") in furtherance of the project known as Rodemacher Unit 3 (the "Project")." Section 5 of the Shaw-Stone contract also provided that all terms and conditions of the "Prime Contract" between Shaw and CLECO Power, are "directly applicable" to the Shaw-Stone contract. Section 6 of the Shaw-Stone contract provides that "all employees of Engineer [Stone] shall be deemed to be the statutory employees of Contractor [Shaw] and Owner [CLECO Power] in accordance with applicable law, and Contractor [Shaw] acknowledges that Engineer [Stone] is performing Services which are integral to Contractor's [Shaw's] and Owner's [CLECO Power's] business operations."

Stone then entered into an agreement/purchase order with Foster Wheeler on February 2, 2006 to supply two cyclones, including all associated materials and labor, for Rodemacher Unit 3. By means of that purchase order, Shaw subcontracted a portion of the work to Foster Wheeler. Made part of that contract/purchase order is a document titled "Consent to Assignment", which was

8

signed by representatives of CLECO Power, Shaw, Stone and Foster Wheeler. This "Consent to Assignment" lists CLECO Power as owner, Shaw as contractor, and Foster Wheeler as subcontractor. Thus, the "Consent to Assignment" signed by the parties clearly contemplates Foster Wheeler as a subcontractor of Shaw.

Appellees also argue that even if it were found Shaw did not subcontract directly with Foster Wheeler, it is still entitled under the law to statutory employer status. In support of this argument, Shaw cites the case of *St. Angelo v. United Scaffolding, Inc./X-Serv., Inc.*, 40 So.3d 365. In that case, the plaintiffs were injured in a reactor explosion at the Chalmette Refinery. The plaintiffs were employed directly by S.J. Owens Enterprises, Inc. Personal injury suits were filed against ExxonMobil and Chalmette Refining, L.L.C., who both contended they were statutory employers of the plaintiffs. ExxonMobil operated the Chalmette Refinery under an operating agreement between it and Chalmette Refining, L.L.C. The plaintiffs' direct employer, S.J. Owens, had entered into a "Continuing Services Agreement" with Procurement, which was a division of ExxonMobil Global Services. ExxonMobil argued the contract between S.J. Owens and Procurement was actually a contract between S.J. Owens and ExxonMobil, because Procurement entered into the contract on behalf of ExxonMobil and Chalmette Refining, L.L.C. The plaintiffs countered that Procurement was not permitted to contract on behalf of ExxonMobil and Chalmette Refining, L.L.C.

The court in *St. Angelo* found Procurement was authorized by a Master Services Agreement between it and ExxonMobil to engage in "procurement of goods and services on behalf of ExxonMobil, including "arranging contracts, agreements, or orders in the name of and for the account of Purchaser to acquire selected goods, services, and construction works." *Id.* at 373. In concluding that Procurement could contract on ExxonMobil's behalf, the fourth circuit stated:

9

The fact that the Procurement division of ExxonMobil Global Services signed the CSA does not deny statutory employer status to ExxonMobil and CRLLC, who are clearly the principal parties in the agreement. A clear reading of the applicable statutes and this Court's recent decisions shows that statutory employer status is more liberally favored as a result of the 1997 amendment in the law.

*Id.* at 374.

In the instant case, Stone was authorized in the contract between it and Shaw to provide "engineering and procurement services" as described in the general contract between CLECO Power and Shaw. Despite Plaintiffs arguments that "there is no provision in the Shaw-Stone Contract whereby Shaw affirmatively grants unto Stone the legal authority to act in the name of Shaw by contracting with Third Parties," the above provision in the Shaw-Stone contract authorizing Stone to be responsible for "procurement services" in furtherance of the Rodemacher Unit 3 project does grant such authority. We agree that Stone was acting on behalf and for the benefit of Shaw, as the principal of Stone, thus entitling Shaw to classification as the statutory employer of Foster Wheeler's direct employee, Louis Fox. The trial court did not err in granting Shaw and CLECO Power's motion for summary judgment.

## ANALYSIS

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaintiffs-Appellants.

**AFFIRMED.**

10