EDWIN A. LOMBARD, Judge.
11Appellants, Phillip St. Angelo, Jr. and Michael Bordelon, Sr., et al, filed a suit for damages against various parties, including appellees, ExxonMobil Oil Corporation and Chalmette Refining, L.L.C., for injuries sustained while working at the Chalmette Refinery in St. Bernard Parish. Appellees were granted summary judgment by the trial court as statutory employers of appellants and thus immune from tort liability. For the reasons provided below, we affirm.

Factual and Procedural Background

Michael Bordelon, Sr. was employed as a pipe fitter and welder foreman by S.J. Owens Enterprises, Inc., an industrial fabricated metal products company based in Chalmette, Louisiana in St. Bernard Parish. Phillip St. Angelo was also employed by S.J. Owens as a driver and “helper” on pipe fitting and installation. On April 7, 2005, Mr. Bordelon and Mr. Angelo were in the employ of S.J. Owens when an explosion occurred on a reactor that they were assigned to, causing hair and flesh burns and other bodily injuries. On November 10, 2005, plaintiffs filed suit in the 34th Judicial District Court against United Scaffolding, Inc./X-Serv., Inc., Kellogg Brown & Root, Inc., ExxonMobil Corporation, and Chalmette 12Refíning, L.L.C. (CRLLC), alleging multiple acts of negligence. Appellees filed an Answer to plaintiffs’ lawsuit on January 20, 2006.
On November 8, 2007, ExxonMobil and CRLLC moved for Summary Judgment, alleging that they had immunity from tort liability as statutory employer of plaintiffs as pursuant to La.Rev.Stat. § 23:1061. Plaintiffs filed an opposition to their motion. Plaintiffs also filed a Motion for Summary Judgment as to the same statutory employer issue. The trial court denied both parties’ summary judgment motions. Defendants state that this first denial of their summary judgment by the trial court was due to their initial inability to establish that ExxonMobil Global Services Company, a subdivision of ExxonMobil, had express authority to contract on behalf of CRLLC with plaintiffs’ employer, S.J. Owens.
Defendants filed a second Motion for Summary Judgment on June 6, 2008, allegedly providing more proof to the court as to their ability to contract on CRLLC’s behalf and providing the contractual documentation that establishes a statutory employer status to CRLLC and ExxonMobil. This June 6, 2008 motion is the summary judgment motion at issue before this Court.
In their motion for summary judgment, defendants state that they are entitled to the statutory employer status contracted with plaintiffs’ immediate employer, S.J. Owens, in a Continuing Services Agreement (CSA) of July 1, 2002. This CSA was made effective between S.J. Owens, Enterprises, Inc. and Procurement, a division of ExxonMobil Global Services Company. It was later amended on July 1, *368 2004 and to take effect the same day, and this amended CSA was “agreed and accepted” by S.J. Owens and “Procurement, a division of ExxonMobil Global Services Company, on behalf of Chalmette Refining, L.L.C.”
laTherefore, under this CSA defendants assert that they are entitled to tort liability immunity per Louisiana’s statutory employer statute, La.Rev.Stat. § 23:1061. They first assert that they are entitled to a presumption of immunity under § 23:1061(A)(3) because of the Continued Services Agreement. They secondly argue that a work order issued by Exxon “as Operator, Agent for Chalmette Refining, L.L.C.” is a separate contract with S.J. Owens that also expressly implements the terms of the Continued Services Agreement.
Plaintiffs, in their opposition to defendants’ summary judgment motion, argued that defendants are not a statutory employer because ExxonMobil Global Services Company is not allowed to contract on behalf of ExxonMobil and Chalmette Refining, L.L.C. They principally argued that there was no contract between S.J. Owens and CRLLC, and that there was therefore no contract that could establish a statutory employer relationship over S.J. Owens’ immediate employees.
The trial court granted defendants’ second motion for summary judgment on March 18, 2009, dismissing all claims against ExxonMobil and Chalmette Refining with prejudice. The trial court provided no written reasons for judgment. It is the granting of defendants’ second motion for summary judgment that appellants bring before this Court.

Standard of Review

An appellate court reviews a district court’s decision to grant a motion for summary judgment de novo, using the same criteria that governs the district court’s consideration of whether summary judgment is appropriate. Kimpton Hotel & Restaurant Group, Inc. v. Liberty Mutual Fire Ins. Co., 2007-1209, p. 3 (La.App. 4 Cir. 12/19/07), 974 So.2d 72, 75. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to |4material fact, and that mover is entitled to judgment as a matter of law.” La. Code Civ. Proc. art. 966(B). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The burden of proof remains with the movant. La.Code Civ. Proc. art. 966(C)(2). Because the statutory employer doctrine is a defense, defendants would bear the burden of proof on this issue at trial. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action or defense. La. Code Civ. Proc. art. 966(E). A summary judgment procedure is favored under our law.

Statutory Employer Doctrine

The determination of statutory employer status is a question of law for the court to decide. Ramos v. Tulane Univ. of La., 2006-0487, p. 3 (La.App. 4 Cir. 1/31/07), 951 So.2d 1267. Under the Louisiana Workers’ Compensation Act, La.Rev. Stat. § 23:1032, an employee injured in an accident while in the course and scope of his employment is generally limited to the recovery of workers’ compensation benefits as his exclusive remedy against his employer and may not sue his employer, or any principal, in tort. See Deshotel v. Guichard Operating Company, Inc., 2003-3511, p. 6-9 (La.12/17/04), 916 So.2d 72, 76-79. § 23:1032 provides as follows:
§ 1032. Exclusiveness of rights and remedies; employer’s liability to prosecution under other laws
*369 A. (l)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
U(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.
(2) For purposes of this Section, the word “principal” shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
C. The immunity from civil liability provided by this Section shall not extend to:
(1) Any officer, director, stockholder, partner, or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and
(2) To the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.
Under certain circumstances, an owner or principal can be held liable to pay workers’ compensation to an employee of a contractor he engages. These circumstances are set forth in La.Rev.Stat. § 23:1061, provided below. However, under such circumstances, workers’ compensation is the exclusive remedy of the contractor’s employee held to be a statutory employee of the principal, and the principal is immune from tort liability.
The Louisiana Workers’ Compensation Act applies both to a direct employer/employee relationship as well as to a statutory employer/employee relationship. The doctrine of “statutory employer” is also codified in § 23:1061, and was amended in 1997 to provide that when a valid written contract recognizes the existence of a statutory employer relationship, a rebuttable presumption of a statutory relationship is created. La.Rev.Stat. § 23:1061(A)(3). § 23:1061 provides as follows:
1(¶§ 1061. Principal contractors; liability
A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any “principal” as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the “contractor”, for the execution by or under the contractor of *370 the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal’s trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.
(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee’s immediate employer.
(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor’s employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee’s immediate employer or his statutory employer, which recoynizes the principal as a statutory employer. When the contract recoynizes a statutory employer relationship, there shall be a rebutta-ble presumption of a statutory employer relationship between the principal and the contractor’s employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.
B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
(Emphasis added).
1/The Supreme Court has not yet addressed the effect of the 1997 on the statutory employer standard. However, several appellate courts have addressed the amendment, finding that this rebuttable presumption amendment has established a more liberal standard for establishing statutory employer status. Everett v. Rubicon, Inc., 2004-1988, p. 10 (La.App. 1 Cir. 6/14/06), 938 So.2d 1032, 1040. Because we do not find that the plaintiffs in this matter have rebutted the clearly established presumption of a statutory employer relationship in this case, upon de novo review, this Court finds no error in the granting of summary judgment in favor of ExxonMobil and Chalmette Refining, L.L.C.

Analysis

Appellants, who were immediate employees of S.J. Owens at the time of their accident, first argue that Article 14 of the July 1, 2002 CSA contains a provision that extends appellees’ statutory employer status beyond what the law allows. They allege that it allows defendants to claim *371 tort immunity as statutory employers without having the burden of paying workers’ compensation benefits. Article 14 provides as follows:
Article 14: APPLICABLE LAW
For any Work order performed in whole or in part on User’s premises in Louisiana, the validity, interpretation and construction of this Agreement and any such Work Order incorporating this Agreement shall be governed by the laws of the state of Louisiana without reference to that state’s principles of conflicts of law. When Louisiana law governs, User (as principal employer) and Contractor (as direct employer) agree to recognize User as the statutory employer of employees of Contractor and its Subcontractors while such employees are providing Services to User under this agreement. This provision is included for the sole purpose of establishing a statutory employer relationship to gain the benefits expressed in La.Rev.Stat. 23:1031(C-E) and La. Rev.Stat. 23:1061(A), and is not intended to create an employer/employee relationship for any other purpose. For any Work Order not performed in whole or in part on User’s premises in Louisiana, the validity, interpretation and construction of this agreement and any such Work Order incorporating this Agreement shall be governed by the laws of the state of Texas without reference to that state’s principles of conflicts of law.
|s(Emphasis added).
Appellants also argue that Article 13.1 of this Continuing. Services Agreement also allows defendants to shirk their workers’ compensation obligations while still enjoying tort immunity as statutory employer. Article 13.1(a) provides in pertinent part:
13.1: Minimum Insurance Requirements
Contractor shall carry and maintain in force at least the following insurances and amounts:
(a) Workers’ Compensation and Employers’ Liability — For all its employees engaged in performing Services, workers’ compensation and employers’ liability insurance or similar social insurance in accordance with applicable Law which may be applicable to those employees.
First, Article 14 includes a clear reference to the primary workers’ compensation statutes at issue in establishing a statutory employer regime. Article 14 does not attempt to escape the responsibility of paying workers’ compensation benefits. Defendants, by making reference to La.Rev. Stat. § 23:1031, clearly contemplate being “liable jointly and in solido to pay benefits as provided under this Chapter” as a “special employer.” La.Rev.Stat. § 23:1031(C).
Article 13.1 also cannot be considered as a contractual effort by appellees to escape their workers’ compensation obligations. It merely asks that any contractor to the Continuing Services Agreement (in this agreement, S.J. Owens) have an appropriate amount of its own workers’ compensation insurance. Neither of the two articles can be construed as a contractual attempt to negate the potential responsibility of workers’ compensation payment.
Appellants’ reliance on Prejean v. Maintenance Enterprises, Inc., 2008-0364, p. 13 (La.App. 4 Cir. 3/25/09), 8 So.3d 766, is without merit. The contractual provision at issue and ruled invalid in Prejean stated that the defendant, Murphy Oil, “shall be liable to pay compensation benefits if the immediate ^employer, contractor, or its subcontractors as applicable, is unable to meet their financial obligation under the Louisiana Workers’ Compensation Stat *372 ute.” Id., p. 13, 8 So.3d at 774. This Court held that the defendant was not entitled to statutory employer status because that specific contractual provision at issue amounted to “modifying, and even renouncing, the unconditional obligation” of worker’s compensation to the injured worker. Id., p. 16, 8 So.3d at 776. For those reasons, this Court in Prejean held that Murphy Oil could not enjoy statutory employer status.
In this matter, however, appellees do not attempt to avoid workers’ compensation responsibilities by way of Articles 14 and 13.1. Article 13.1’s requirement that contractor carry workers’ compensation insurance cannot be construed to argue that defendants intend to relieve themselves of such obligations, as appellants argue. Article 14 incorporates both the benefits and burdens of statutory employer status outlined in La. Rev. Stats. § 23:1031 and 23:1061. Finally, a complete review of the trial record shows no instance where defendants have denied workei’s’ compensation responsibilities to plaintiffs. In fact, in their Motion for Summary Judgment, defendants state that “plaintiffs exclusive remedies against Exxon and CRLLC are under the Louisiana Worker’s Compensation Act.”
Next, appellants challenge the ability of Procurement, a division of ExxonMo-bil Global Services Company, to contract on behalf of appellees, ExxonMobil and Chalmette Refining, L.L.C. They first argue that the Continuing Services Agreement does not allow ExxonMobil to contract on behalf of CRLLC. Defendants argue that ExxonMobil has the rights and obligations to operate the Chalmette Refinery under a November 1, 1997 Operating Agreement between Chalmette Refining, L.L.C. and Mobil Oil Corporation, which has since become ExxonMobil. This Operating Agreement allows ExxonMobil, as operator, to |in“provide all management personnel, operating personnel, technical personnel, and support personnel and services necessary to operate the Refinery,” including “providing or contracting for, from time to time, additional services in Operator’s name or as Owner’s agent.” Under this Operating Agreement, Exxon-Mobil is also authorized to “employ or engage the services of either Party’s Affiliates, as well as independent contractors and/or agents in the conduct” of the refinery’s operations. This Operating Agreement contains numerous provisions, adden-dums, and schedules which clearly mention defendant CRLLC as the owner of the refinery that ExxonMobil is contracting to operate.
It is under this authority from the Operating Agreement that defendants say they properly entered into the CSA with S.J. Owens that grants them statutory employer status, and we agree. This Court holds that the Operating Agreement clearly allows ExxonMobil, as operator of CRLLC’s refinery, to make contractual agreements upon CRLLC’s behalf as their agent. ExxonMobil properly contracted on CRLLC’s behalf when it signed the original CSA and amended CSA of July 1, 2004.
Appellants next claim that “Chalmette Refining, L.L.C. is not named or even mentioned” in the Continuing Services Agreement between S.J. Owens and Procurement, a division of ExxonMobil Services Company. Upon analysis of the record, this contention is clearly without merit. It is clear that the very first page of the July 1, 2004 amended CSA shows the signatures of agreement between S.J. Owens and Procurement, a division of ExxonMobil Global Services Company “on behalf of Chalmette Refining, L.L.C.” The CSA also contains many specific references to CRLCC within the agreement *373 and within the site-specific addendums and exhibits to the CSA.
Appellees’ claim that Global Services cannot contract on behalf of appellees is also without merit. First, plaintiffs acknowledge that “Procurement”, the Indivisión that signed the July 1, 2004 CSA agreement as well as the original CSA of July 1, 2002, is indeed a division of Exxon-Mobil Global Services Company. Next, and most importantly, defendants have presented a Master Services Agreement between Global Services and appellee Exx-onMobil in which Global Services is authorized to engage in “procurement of goods and services” on behalf of Exxon, including “arranging contracts, agreements, or orders in the name of and for the account of Purchaser to acquire selected goods, services, and construction works.” This Master Services Agreement is in the appellate record attached to an affidavit swearing the same. Therefore, it is established that Global Services can clearly contract on ExxonMobil’s behalf as a result of the Master Services Agreement and their general status as a subsidiary of ExxonMobil.
Appellants next argue that the CSA does not grant ExxonMobil and CRLLC statutory employer status because the agreement is not between a principal and a contractor as envisioned by La.Rev. Stat. § 23:1061(A)(3). Appellants fervently argue that there is no signed contract between Chalmette Refining as the principal and S.J. Owens as the contractor, and that § 23:1061(A)(3) in particular only envisions statutory employer status arising from a contract signed between such precise entities. § 23:1061(A)(3), once again, states that
“a statutory employer relationship shall not exist between the principal and the contractor’s employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee’s immediate employer or his statutory employer, which recoynizes the principal as a statutory employer.”
(Emphasis added).
Under § 23:1061(A)(1), the term “principal” in this section is used as defined in § 23:1032(A)(2) of the Louisiana Workers’ Compensation Act. This corollary statutory provision defines a “principal” as “any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was |12engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.” This explicit definition of a “principal” is clearly broader than what appellants wish this Court to find.
This Court seems to hold a broad view of what defines a principal. In Lopez v. U.S. Sprint Communications Company, 2007-0052 (La.App. 4 Cir. 12/5/07), 973 So.2d 819, the plaintiff was employed by Sharp Electric, Inc. when he was injured while performing electrical work on a building owned by Sprint. Sprint moved for summary judgment on the grounds that it was plaintiffs statutory employer. Sprint claimed that it entered into a general contract with Winter Construction Company, which in turn entered a subcontract with Sharp.
This Court outlined the facts as above and noted that “the law presumes the contract to be within the trade, business or occupation by means of a contract with another.” Id., p. 11, 973 So.2d at 826. This Court ultimately determined that the presumption in the law of statutory employer status showed that the plaintiff did not meet the burden shifted onto him “to show that a genuine issue of material fact *374 remained concerning whether Spring was liable in tort.” Id., p. 11, 973 So.2d at 827. In finding a statutory employer relationship between Sprint as principal and the employee of a subcontractor, this Court in Lopez understood the broad parameters of what constitutes a principal.
Furthermore, in Ramos v. Tulane Univ. of La., 2006-0487, p. 7 (La.App. 4 Cir. 1/31/07), 951 So.2d 1267, this Court found that the statutory employer defense applied in a contract between Tulane University and Rocker Electric Company in which Tulane would be the statutory employer over all Rocker employees and all subsequent subcontractors’ employees as well. This Court again determined that the plaintiff had failed to rebut the presumption of statutory employer status clearly outlined in the statute.
| ialn essence, this Court’s recent decisions on statutory employer status since the 1997 amendment do not find such a narrow reading of what constitutes a “principal” and “contractor” as the appellants in this matter suggest. § 23:1032(A)(2) broadly defines a “principal” to meet the broad presumption of statutory employer status given by § 23:1061(A)(3).

Conclusion

Because we find that the defendants have properly contracted for statutory employer status as per Article 14 in the Continuing Services Agreement, we find that the rebuttable presumption of statutory employer status exists in this matter. This Court also finds that the July 1, 2004 Amendment to the CSA clearly establishes the application of this statutory employer status to both ExxonMobil and Chalmette Refining, L.L.C.
The fact that the Procurement division of ExxonMobil Global Services signed the CSA does not deny statutory employer status to ExxonMobil and CRLLC, who are clearly the principal parties in the agreement. A clear reading of the applicable statutes and this Court’s recent decisions shows that statutory employer status is more liberally favored as a result of the 1997 amendment in the law.
Because this contract recognizes defendants as statutory employers to the immediate employees of S. J. Owens, pursuant to La.Rev.Stat. § 23:1061(A)(3), entitled to a rebuttable presumption that they are appellants’ statutory employer. Everett v. Rubicon, Inc., p. 13, 2004-1988 (La.App. 1 Cir. 6/14/06), 938 So.2d 1032, 1042. This presumption “may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.” La. Rev.Stat. § 23:1061(A)(3). The plaintiffs have presented no such argument to rebut the | ^presumption of statutory employer status. See Garcia v. ExxonMobil Oil Corporation, 2008 WL 4239115 (E.D.La.9/8/2008).

Decree

For the reasons provided above, the Motion for Summary Judgment granted in favor of defendants, ExxonMobil Oil Corporation and Chalmette Refining, L.L.C. is affirmed, and all claims against the defendants remain dismissed with prejudice.
AFFIRMED.
BONIN, J., concurs in part and dissents in part and assigns written reasons.