# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31215

United States Court of Appeals
Fifth Circuit

**FILED**
December 8, 2015

Lyle W. Cayce
Clerk

DUSTIN BLAKE WRIGHT,

> Plaintiff - Appellant

v.

EXCEL PARALUBES; CONOCOPHILLIPS COMPANY,

> Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, SMITH, and COSTA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This case requires us to determine whether a non-operating partner in a joint-venture qualifies as a "statutory employer" as that term is used in the Louisiana Workers' Compensation Act ("LWCA"), LA. STAT. ANN. 23:1021 (2014), *et seq.*, even though the operating partner signed a contract with a contractor that did not specifically designate the non-operating partner as a "statutory employer." Holding that the plaintiff has not overcome the presumption that the non-operating partner is a statutory employer, we affirm.

No. 14-31215

## BACKGROUND

Excel Paralubes ("Excel"), a Texas general partnership, and Conoco, Inc. ("CP"),[1] a Delaware corporation, agreed to construct and jointly own a lubricating base oil plant in Westlake, Louisiana. The parties (together, "Defendants") designated CP the construction manager and operator of the plant on behalf of Excel. In this capacity, CP had the duty and authority to select and contract for engineers and contractors to construct the facility and to arrange for routine engineering, technical, and support services during its operation. CP accordingly entered into a contract with Wyatt Field Service Co. ("Wyatt") to perform work on a vacuum tower at the facility. CP and Wyatt signed a Master Services Agreement ("MSA") to effectuate this work.

Dustin Wright was a boilermaker employed by Wyatt. He was injured while performing arc gouging activities in the vacuum tower pursuant to the MSA. After initially collecting workers' compensation benefits under the LWCA from Wyatt, his immediate employer, he brought a negligence suit in state court against Excel and CP for tort damages. Defendants removed the case to the United States District Court for the Western District of Louisiana.

Defendants moved for summary judgment, arguing that Wright was the statutory employee of both CP and Excel at the time of the accident. He could therefore not sue them for tort damages because the LWCA makes workers' compensation the exclusive remedy against statutory employers. Thereafter, Wright amended his complaint to include a claim for gross negligence. In response to the Defendants' motion for summary judgment, Wright asserted that because Excel was not named in the MSA between CP and Wyatt, it could not be considered Wright's statutory employer. He also argued that the newly alleged gross negligence opened the door for tort liability.

---

[1] Conoco, Inc. was later merged into defendant ConocoPhillips Company.

No. 14-31215

The district court rejected both of Wright's arguments and dismissed the case with prejudice. It held that Wright was a statutory employee of both Excel and CP. It also held that even if the Defendants were grossly negligent, Wright's claims were still limited to workers' compensation. Wright timely appeals that dismissal and raises the same issues in this court.

## DISCUSSION

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 275-76 (5th Cir. 2014). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The principal issue on appeal is whether Excel qualifies as a "statutory employer" even though it did not sign the MSA and was not expressly named as CP's affiliate in the LWCA-invoking provision. The LWCA makes workers' compensation the exclusive remedy for injured employees against their direct employers and against "principals" or "partner[s]" of a principal. LA. STAT. ANN. §§ 23:1032.A(1)(a)-(b) (2014). A "principal" is defined as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury." LA. STAT. ANN. § 23:1032.A(2) (2014). When a principal hires a contractor "for the execution by or under the contractor of the whole or any part of the work undertaken by the principal," the principal is a "statutory employer" and entitled to the same exclusive remedy protections against the contractor's employees as against its own. LA. STAT. ANN. § 23:1061.A(1) (2014).

In two situations, a principal's relationship with a contractor leads to a statutory employer relationship and limited liability. *See Daigle v. McGee Backhoe and Dozer Serv.*, 08-1183, p. 5 (La. App. 5 Cir. 4/28/2009); 16 So.3d 4,

3

No. 14-31215

7. First, the principal may contract to perform work and then subcontract all or a portion of that work to another (the "two contract theory"). LA. STAT. ANN. § 23:1061.A(2) (2014). Second, the principal may enter into a written contract "recognizing" it as the statutory employer of the other party's employees. LA. STAT. ANN. § 23:1061.A(3) (2014). In the latter circumstance, relevant in this case, a contract recognizing a statutory employer relationship creates a rebuttable presumption of such a relationship that may be overcome only when the employee shows that the work "is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." *Id.* Louisiana courts have held that this rebuttable presumption amendment effects a more liberal standard for statutory employer status. *St. Angelo v. United Scaffolding, Inc./X-Serv., Inc.*, 2009-1420, p. 7 (La. App. 4 Cir. 5/19/2010); 40 So.3d 365, 370; *Everett v. Rubicon, Inc.*, 2004-1988, p. 10 (La. App. 1 Cir. 6/14/06); 938 So.2d 1032, 1040. The basic issue here is whether the MSA "recognizes" a statutory employer relationship between CP, Excel, and Wyatt's employees.

Several provisions of the MSA between CP and Wyatt are relevant to this dispute. First, "this Agreement," as used in the contract, refers to the entirety of the MSA. In the "General Provisions," Paragraph 30, the MSA provides that captions and headings used in the Agreement "are intended for convenience only and shall not be used for purposes of construction or interpretation." Further in that paragraph, all exhibits "are incorporated and made a part of this Agreement."

Second, Paragraph 12 is titled (but not for purposes of interpretation) "Risk Structure," and contains Subsection (f), "Extension of Indemnities" (also non-interpretively titled), which states (emphasis added):

> To the maximum extent permitted by applicable law, the exclusions of liability and indemnities . . . above and *elsewhere in*

No. 14-31215

*this Agreement* shall extend to the employees, officers and directors of each party and to their respective Affiliates . . . . For purposes of this Agreement, unless the context requires otherwise:

. . . .

"Affiliate" shall mean a company . . . . which is specifically identified to one party as an entity for which the other party has operating or management responsibilities.

Third, Exhibit G to the MSA designates CP as the statutory employer of Wyatt's employees. The relevant language states (emphasis added):

The following provisions and terms shall apply in all cases where [Wyatt's] employees (defined to include [Wyatt's] direct, borrowed, special, or statutory employees) are covered by the Louisiana Workers' Compensation Law, Louisiana Revised Statutes ("La. R.S.") 23:1021 et seq, as to work or services performed under this Agreement.

1.  In all cases where [Wyatt's] employees (as defined above) are covered by the Louisiana Workers' Compensation Law, La. R.S. 23:1021 et seq., [CP] and [Wyatt] agree that the work and operations performed by [Wyatt] and its employees pursuant to the Agreement are an integral part of and are essential to the ability of [CP] to generate [CP's] goods, products and services, and that [Wyatt's] work and services shall be considered part of [CP's] trade, business, and occupation, for purposes of La. R.S. 23:1061(A)(1). *Furthermore, [CP] and [Wyatt] agree that [CP] is the principal or statutory employer of [Wyatt's] employees for purposes of La. R.S. 23:1061(A) only.* Irrespective of [CP's] status either as the statutory employer or as the special employer (as defined in La. R.S. 23:1031(C)) of [Wyatt's] employees, and regardless of any other relationship or alleged relationship between [CP] and [Wyatt's] employees, [Wyatt] shall be and remain at all times primarily responsible for the payment of Louisiana workers' compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from [CP]. This Exhibit is limited to and shall apply only in and

5

to the extent of instances involving coverage of the Louisiana Workers' Compensation Law.

These provisions explain, and Wright does not here dispute, that at least CP is the statutory employer of Wyatt's employees, including Wright. The same provisions also bear on the question whether statutory employer status extends to Excel as CP's non-operating partner in the joint venture.

Because the Louisiana Supreme Court has not decided the issue presented, we must make an "*Erie* guess" as to how it would apply state law. *See Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009). In doing so, decisions of intermediate state appellate courts are our guide unless other persuasive data indicates the Louisiana Supreme Court would decide otherwise. *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 646 (2002).

Particularly instructive here is the appellate court decision in *St. Angelo*. 40 So.3d 365. In that case, ExxonMobil signed an agreement with Chalmette to operate a refinery Chalmette owned. *Id.* at 372. ExxonMobil exercised this operational authority through a division of one of its subsidiaries by entering into a services contract with S.J. Owens. *Id.* The contract between ExxonMobil's subsidiary and S.J. Owens designated the subsidiary as the statutory employer of S.J. Owens's employees. *Id.* at 371. Two of S.J. Owens's employees brought tort actions against ExxonMobil and Chalmette after being injured on the job. *Id.* at 367. Holding that "statutory employer status is . . . liberally favored," the court concluded that both ExxonMobil as operator and Chalmette as owner were statutory employers even though ExxonMobil's subsidiary executed the agreement. *Id.* at 374. As they were "clearly the principal parties to the agreement," they could enjoy statutory employer status under it. *Id.* The court noted that its prior precedent "seems to hold a broad view of what defines a principal." *Id.* at 373.

No. 14-31215

Another state appellate court relied on *St. Angelo* to reject a "rigid application of La. R.S. 23:1061(A)(3)" that would "limit the creation of a statutory employer status to the parties executing the agreement." *Johnson v. Motiva Enters., LLC*, 13-305, p. 10 (La. App. 5 Cir. 10/30/2013); 128 So.3d 483, 490. In *Johnson*, Motiva was an affiliate of Shell, and Shell contracted to be the statutory employer of AbClean's employees. 128 So.3d at 486. The plaintiff was injured at Motiva's plant and sued in tort. *Id.* The court held that Motiva was the plaintiff's statutory employer even though it did not sign the agreement because there is a "broad view of what constitutes a statutory employer" and "the common intent of the parties in creating statutory employer status" matters. *Id.* at 490. Because the Shell/AbClean agreement intended to make Shell affiliates like Motiva statutory employers, they were classified as such.

In *St. Angelo*, the refinery owner was entitled to statutory employer status when the refinery's operator was authorized to and did enter into a contract on the owner's behalf that designated a statutory employer. The same "broad presumption of statutory employer status," 40 So.3d at 374, should apply to Excel in this case. Not only did CP, as operator, enter into a contract on Excel's behalf as a co-owner, but CP is also a co-owner of the joint venture. *See* LA. CIV. CODE ANN. art. 2814 (2014) ("A partner is a mandatary of the partnership for all matters in the ordinary course of its business other than the alienation, lease, or encumbrance of its immovables.").[2] CP's execution of the contract inured to the benefit of, and could have been enforced by the co-owner Excel.

---

[2] Joint ventures and partnerships are treated analogously for the purposes of the LWCA's exclusive remedy provisions. *See Buckbee v. AWECO, Inc.*, 418 So.2d 698, 702 (La. Ct. App. 1982).

7

No. 14-31215

Wright argues, however, that because Exhibit G to the MSA explicitly references only CP as the statutory employer, Excel lacks the protection of this provision of the "written contract."  It is true that in the cases just cited, the non-signing party later deemed a statutory employer was either mentioned in the written services contract or listed as a subsidiary or affiliate in it.  It is also true that where no written agreement existed denominating *any* party as the statutory employer, that status has been rejected.  *See Ernest v. Petroleum Serv. Corp.*, 2002-2482, p. 5-6 (La. App. 1 Cir. 11/19/03); 868 So.2d 96, 99.[3]

Although the MSA between Wyatt and CP makes no direct mention of Excel, nonetheless, a careful exegesis of the above-quoted MSA provisions supports including Excel in the scope of Exhibit G.  First, the agreement's titles are irrelevant to the contract's interpretation, and Exhibit G is fully incorporated within the body of the Agreement.  Second, the exclusions of liability and indemnities described in paragraph 12 explicitly adds those provisions found "elsewhere in this Agreement."  Such exclusions and indemnities, further, apply to Affiliates of the parties, a term that includes Excel as an "entity for which the other party has operating or management responsibilities" pursuant to the joint venture.  That Exhibit G amounts to an exclusion of liability or indemnity protection for the "Company" is evident because, were the "Company" not a statutory employer of Wyatt's employees, it could be sued in tort, and as a result, issues of both liability and indemnity would arise between the "Company" and Wyatt.  *See* Paragraph 12(b) (Wyatt

---

[3] The partial dissent, citing *Ernest*, asserts "[t]he only intermediate state court that has considered such a situation [presented here] has rejected statutory employer status." Diss. Op. at 11.  *Ernest* has little bearing on the situation presented by this case.  In *Ernest*, the contract between the principal and the contractor made no designation of statutory employer status at all, so it was clear the defendant "failed to demonstrate the existence of a written contract providing for the statutory relationship."  868 So.2d at 99.  Here, there is an express designation of statutory employer status, but the issue is which parties it covers.

indemnifies "Company" for, *inter alia*, death or injury to Wyatt's employees, and "Company" has no responsibility to Wyatt for such injury or death). Finally, because the signatory "Company," CP, achieves the benefit of Exhibit G as a statutory employer, its Affiliate Excel also benefits through Paragraph 12(f).

Whether viewed in terms of the inherent legal relationships among CP, Excel, and the joint venture and Wyatt, or proper inferences drawn from the MSA, we do not think the parties' failure to name or require the signature of Excel in the MSA can overcome the broad presumption of statutory employer status approved by Louisiana courts in *St. Angelo* and *Johnson*. The very purpose of CP and Excel in creating the joint venture was to give CP the exact operational authority it exercised on behalf of the joint venture when it signed the MSA with Wyatt. The parties' written contract, in essence, "recognized" the parties to the joint venture as the statutory employers through their authorized agent. LA. REV. STAT. ANN. § 32:1061(A)(3). Though unpublished and non-precedential, our decision in *Joseph v. Shell Chem., LP*, 390 Fed. Appx. 401 (5th Cir. 2010) is instructive on this point. There, Shell and Motiva contracted with Wyatt, which subcontracted part of the work to Atlantic, which directly employed the injured plaintiffs. *Id.* at 402. The contract between Shell, Motiva, and Wyatt designated Shell and Motiva statutory employers for Wyatt's employees. *Id.* at 404. We rejected the plaintiffs' argument that Shell and Wyatt were not also statutory employers of Atlantic's employees because there was no signed agreement between Shell, Motiva, and Atlantic. *Id.*

The liberal attribution of statutory employer status by Louisiana courts in cases like this reflects economic realities and efficiency. Most joint venturers would expect the non-operating partner in a joint venture to enjoy the same statutory employer status the operating partner agrees to. Indeed, the indemnity and liability exclusion provisions of the MSA in the case at hand

were intended to extend to Excel.  Likewise, most contractors in Wyatt's position would have no problem designating a non-operating partner as a statutory employer.  Courts promote efficiency by reaching the decision that aligns with the parties' rational expectations.  *See* ROBERT COOTER & THOMAS ULEN, LAW & ECONOMICS 292-94 (6th ed. 2012); *c.f. Johnson*, 128 So.3d at 490 (Defendants "contend that requiring a separate contract between large corporations by each affiliate and each contractor would be cost prohibitive and is not required by the LWCA.").

The MSA in this case recognizes a statutory employer relationship for both CP and Excel.  This creates a rebuttable presumption of a statutory employer relationship that Wright has not overcome.

Finally, Wright's gross negligence claim is easily resolved.  As mentioned, the LWCA makes workers' compensation the exclusive remedy for employees injured on the job.  LA. STAT. ANN. § 23:1032.A(1)(a) (2014).  The only exception is for intentional acts.  *Id.*  "[A]nything less than intentional, whether it be gross negligence or violation of a safety rule, remains in workers' compensation."  *Perret v. Cytec Inds., Inc.*, 04-745, p.6 (La. App. 5 Cir. 11/30/2004); 889 So.2d 1121, 1125.  Thus, "gross negligence does not meet the intentional act requirement," *Reeves v. Structural Pres. Sys.*, 98-1795, p. 8 (La. 3/12/99); 731 So.2d 208, 212, and Wright's gross negligence allegation is subsumed within workers' compensation.  Recognizing this, Wright attempts in his reply brief to reframe (or replead) his gross negligence claim into an intentional act allegation.  But this court will not consider issues raised for the first time in a reply brief.  *See Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 536 (5th Cir. 2003).  The district court was correct to hold that even if the Defendants were grossly negligent, Wright's sole remedy is workers' compensation, and he has waived any intentional act allegation.

For these reasons, the judgment of the district court is **AFFIRMED**.

10

No. 14-31215

GREGG COSTA, Circuit Judge, dissenting in part:

The very nature of an *Erie* guess means that one cannot disagree with certitude.    The majority opinion provides reasoned arguments for why the Supreme Court of Louisiana might rule in favor of Excel's position if it ever confronts this situation.    But one thing is certain. As the majority opinion recognizes, it is extending statutory employer status beyond what any Louisiana state court has ever recognized.    No case prior to this one has assigned such status to a party that is neither "mentioned in the written services contract [n]or listed as a subsidiary or affiliate in it."  Maj. Op. at 8. The only intermediate state court that has considered such a situation has rejected statutory employer status.  *See Ernest v. Petroleum Serv. Corp.*, 868 So. 2d 96, 99 (La. App. 1 Cir. 11/19/03).  The broadest reading a Louisiana court has given the post-1997 statute is *St. Angelo*, and it was a divided opinion even though unlike here the services agreement was expressly entered into on behalf of the defendant.  *St. Angelo v. United Scaffolding, Inc./X-Serv., Inc.*, 40 So. 3d 365, 374 (La. App. 4 Cir. 5/19/2010) (Bonin, J., dissenting).  I therefore believe that the better approach is to not extend a state law immunity beyond the already-controversial outer bounds of state case law.  *Cf. Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) (citing cases recognizing that federal court sitting in diversity should not "fashion new theories of recoveries" for plaintiffs or "adopt innovative" defenses).

That is especially true when that extension of state law requires us to rely on "inferences" drawn from various provisions of a contract (Maj. Op. at 9), rather than follow the contract's express terms.    Although the 1997 amendments to the Lousiana Worker's Compensation Act "establish a more liberal standard for establishing statutory employer status," *St. Angelo*, 40 So. 3d at 370, that comparative observation is not the same thing as saying that

11

the amended standard should be construed liberally or that courts have license to broadly construe contracts beyond what the plain language supports. It also does not change that the defendant bears the burden of establishing its entitlement to immunity as a statutory employer and that such immunity "must be strictly construed against the party claiming the immunity," *see Weber v. State*, 635 So.2d 188, 191, 193 (La. 1994),[1] rules which can serve as tiebreakers in close cases.

Ordinary principles of contract interpretation are thus used in determining whether a party has immunity under the 1997 statute, which simply asks "whether the contract—whatever type of contract it might be— 'recognizes' the principal as a statutory employer." H. Alston Johnson III, 13 La. Civ. L. Treatise, Workers' Comp. L. & Prac. § 123 (5th ed. 2014); La. R.S. 23:1061(A)(3). The majority opinion rightly notes the importance of following the contractual expectations of the parties. Maj. Op. at 9. Of course, the typical and easy way to make those expectations clear is to draft unambiguous language, such as a provision stating that "*BUYER or any of its subsidiaries or affiliates* involved in the Services performed hereunder in Louisiana shall be considered a Statutory Employer." *Johnson v. Motiva Enterprises LLC*, 128 So. 3d 483, 489 (La. App. 5 Cir. 10/30/13) (emphasis in original); *see also Joseph*

---

[1] There is no *"Erie* guess" on these standards given that *Weber* is a state supreme court decision and no Louisiana court has held that the 1997 amendments alter these general principles. To the contrary, intermediate courts have continued to rely on *Weber* for these principles when addressing statutory employer questions. *See, e.g., Ernest*, 868 So. 2d at 98; *Labranche v. Fatty's, LLC*, 48 So. 3d 1270, 1272 (La. App. 1 Cir. 10/29/10). Also counseling against a liberal construction of contracts when applying section 1061(a)(3) is that the clause at issue in this case is stated as an exception to the general principle that "a statutory employer relationship shall not exist between the principal and the contractor's employees." La. R.S. 23:1061(A)(3) (stating this as the law "unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes a statutory employer relationship").

No. 14-31215

*v. Shell Chem. Co.*, 2009 WL 1789422, at \*4 (E.D. La. June 23, 2009), *aff'd*, 390 F. App'x 401 (5th Cir. 2010) (same language).  That language provides clear guidance and prevents a party from invoking ambiguities in the overall structure of a services agreement to seek statutory employer status when it benefits from doing so, but take the opposition position if its interests were aligned differently.

I would thus reverse the district court on the statutory employer issue, though I agree with the majority opinion that Wright has not identified any intentional acts sufficient to establish that exception.