EDITH H. JONES, Circuit Judge:
This case requires us to determine whether a non-operating partner in a joint-venture qualifies as a “statutory employer” as that term is used in the Louisiana Workers’ Compensation Act (“LWCA”), La. Stat. Ann. 23:1021 (2014) et seq., even though the operating partner signed a contract with a contractor that did not specifically designate the non-operating partner as a “statutory employer.” Holding that the plaintiff has not overcome the presumption that the non-operating partner is a statutory employer, we affirm.
BACKGROUND
Excel Paralubes (“Excel”), a Texas general partnership, and Conoco, Inc. (“CP”),[1] a Delaware corporation, agreed to construct and jointly own a lubricating base oil plant in Westlake, Louisiana. The parties (together, “Defendants”) designated CP the construction manager and operator of the plant on behalf of Excel. In this capacity, CP had the duty and authority to select and contract for engineers and con *732 tractors to construct the facility and to arrange for routine engineering, technical, and support services during its operation. CP accordingly entered into a contract with Wyatt Field Service Co. (“Wyatt”) to perform work on a vacuum tower at the facility. CP and Wyatt signed a Master Services Agreement (“MSA”) to effectuate this work.
Dustin Wright was a boilermaker employed by Wyatt. He was injured while performing arc gouging activities in the vacuum tower pursuant to the MSA. After initially collecting workers’ compensation benefits under the LWCA from Wyatt, his immediate employer, he brought a negligence suit in state court against Excel and CP for tort damages. Defendants removed the case to the United States District Court for the Western District of Louisiana.
Defendants moved for summary judgment, arguing that Wright was the statutory employee of both CP and Excel at the time of the accident. He could therefore not sue them for tort damages because the LWCA makes workers’ compensation the exclusive remedy against statutory employers. Thereafter, Wright amended his complaint to include a claim for gross negligence. In response to the Defendants’ motion for summary judgment, Wright asserted that because Excel was not named in the MSA between CP and Wyatt, it could not be considered Wright’s statutory employer. He also argued that the newly alleged gross negligence opened the door for tort liability.
The district court rejected both of Wright’s arguments and dismissed the case with prejudice. It held that Wright was a statutory employee of both Excel and CP. It also held that even if the Defendants were grossly negligent, Wright’s claims were still limited to workers’ compensation. Wright timely appeals that dismissal and raises the same issues in this court.
DISCUSSION
This court reviews a district court’s grant of summary judgment de novo, applying the same standards as the district court. Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A., 754 F.3d 272, 275-76 (5th Cir.2014). Summary judgment is proper when “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a).
The principal issue on appeal is whether Excel qualifies as a “statutory employer” even though it did not sign the MSA and was not expressly named as CP’s affiliate in the LWCA-invoking provision. The LWCA makes workers’ compensation the exclusive remedy for injured employees against their direct employers and against “principals” or “partners]” of a principal. La. Stat. Ann. §§ 23:1032(A)(l)(a)-(b) (2014). A “principal” is defined as “any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury.” La. Stat. Ann. § 23:1032(A)(2) (2014). When a principal hires a contractor “for the execution by or under the contractor of the whole or any part of the work undertaken by the principal,” the principal is a “statutory employer” and entitled to the same exclusive remedy protections against the contractor’s employees as against its own. La. Stat. Ann. § 23:1061(A)(1) (2014).
In two situations, a principal’s relationship with a contractor leads to a statutory employer relationship and limited liability. See Daigle v. McGee Backhoe and Dozer Serv., 08-1183, p. 5 (La.App. 5 Cir. 4/28/2009); 16 So.3d 4, 7. First, the principal may contract to perform work *733 and then subcontract all or a portion of that work to another (the “two contract theory”). La. Stat. Ann . § 23:1061.A(2) (2014). Second, the principal may enter into a written contract “recognizing” it as the statutory employer of the other party’s employees. La. Stat. ANN. § 23:1061.A(3) (2014). In the latter circumstance, relevant in this case, a contract recognizing a statutory employer relationship creates a rebuttable presumption of such a relationship that may be overcome only when the employee shows that the work “is. not an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.” Id. Louisiana courts have held that this rebuttable presumption amendment effects a more liberal standard for statutory employer status. St. Angelo v. United Scaffolding, Inc./X-Serv., Inc., 2009-1420, p. 7 (La.App. 4 Cir. 5/19/2010); 40 So.3d 365, 370; Everett v. Rubicon, Inc., 2004-1988, p. 10 (La.App. 1 Cir. 6/14/06); 938 So.2d 1032, 1040. The basic issue here is whether the MSA “recognizes” a statutory employer relationship between CP, Excel, and Wyatt’s employees.
Several provisions of the MSA between CP and Wyatt are relevant to this dispute. First, “this Agreement,” as used in the contract, refers to the entirety of the MSA. In the “General Provisions,” Paragraph 30, the MSA provides that captions and headings used in the Agreement “are intended for convenience only and shall not be used for purposes of construction or interpretation.” Further in that paragraph, all exhibits “are incorporated and made a part of this Agreement.”
Second, Paragraph 12 is titled (but not for purposes of interpretation) “Risk Structure,” and contains Subsection (f), “Extension of Indemnities” (also non-interpretively titled), which states (emphasis added):
To the maximum extent permitted by applicable law, the exclusions of liability and indemnities ... above and elsewhere in this Agreement shall extend to the employees, officers and directors of each party and to their respective Affiliates .... For purposes of this Agreement, unless the context requires otherwise:
“Affiliate” shall mean a company.... which is specifically identified to one party as an entity for which the other party has operating or management responsibilities.
Third, Exhibit G to the MSA designates CP as the statutory employer of Wyatt’s employees. The relevant language states (emphasis added):
The following provisions and terms shall apply in all cases where [Wyatt’s] employees (defined to include [Wyatt’s] direct, borrowed, special, or statutory employees) are covered by the Louisiana Workers’ Compensation Law, Louisiana Revised Statutes (“La. R.S.”) 23:1021 et seq, as to work or services performed under this Agreement.
1. In all cases where [Wyatt’s] employees (as defined above) are covered by the Louisiana Workers’ Compensation Law, La. R.S. 23:1021 et seq., [CP] and [Wyatt] agree that the work and operations performed by [Wyatt] and its employees pursuant to the Agreement are an integral part of and are essential to the ability of [CP] to generate [CP’s] goods, products and services, and that [Wyatt’s] work and services shall be considered part of [CP’s] trade, business, and occupation, for purposes of La. R.S. 23:1061(A)(1). Furthermore, [CP] and [Wyatt] agree that [CP] is the principal or statutory employer of [Wyatt’s] employees for *734 purposes of La. R.S. 23:1061(A) only. Irrespective of [CP’s] status either as the statutory employer or as the special employer (as defined in La. R.S. 23:1031(0) of [Wyatt’s] employees, and regardless of any other relationship or alleged relationship between [CP] and [Wyatt’s] employees, [Wyatt] shall be and remain at all times primarily responsible for the payment of Louisiana workers’ compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from [CP]. This Exhibit is limited to and shall apply only in and to the extent of instances involving coverage of the Louisiana Workers’ Compensation Law.
These provisions explain, and Wright does not here dispute, that at least CP is the statutory employer of Wyatt’s employees, including Wright. The same provisions also bear on the question whether statutory employer status extends to Excel as CP’s non-operating partner in the joint venture.
Because the Louisiana Supreme Court has not decided the issue presented, we must make an “Erie guess” as to how it would apply state law. See Beavers v. Metro. Life Ins. Co., 566 F.3d 436, 439 (5th Cir.2009). In doing so, decisions of intermediate state appellate courts are our guide unless other persuasive data indicates the Louisiana Supreme Court would decide otherwise. See Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 646 (5th Cir.2002).
Particularly instructive here is the appellate court decision in St. Angelo. 40 So.3d 365. In that case, ExxonMobil signed an agreement with Chalmette to operate a refinery Chalmette owned. Id. at 372. ExxonMobil exercised this operational authority through a division of one of its subsidiaries by entering into a services contract with S.J. Owens. Id. The contract between ExxonMobil’s subsidiary and S.J. Owens designated the subsidiary as the statutory employer of S.J. Owens’s employees. Id. at 371. Two of S.J. Owens’s employees brought tort actions against ExxonMobil and Chalmette after being injured on the job. Id. at 367. Holding that “statutory employer status is ... liberally favored,” the court concluded that both ExxonMobil as operator and Chalmette as owner were statutory employers even though ExxonMobil’s subsidiary executed the agreement. Id. at 374. As they were “clearly the principal parties to the agreement,” they could enjoy statutory employer status under it. Id. The court noted that its prior precedent “seems to hold a broad view of what defines a principal.” Id. at 373.
Another state appellate court relied on St. Angelo to reject a “rigid application of La. R.S. 23:1061(A)(3)” that would “limit the creation of a statutory employer status to the parties executing the agreement.” Johnson v. Motiva Enters., LLC, 13-305, p. 10 (La.App. 5 Cir. 10/30/2013); 128 So.3d 483, 490. In Johnson, Motiva was an affiliate of Shell, and Shell contracted to be the statutory employer of AbClean’s employees. 128 So.3d at 486. The plaintiff was injured at Motiva’s plant and sued in tort. Id. The court held that Motiva was the plaintiffs statutory employer even though it did not sign the agreement because there is a “broad view of what constitutes a statutory employer” and “the common intent of the parties in creating statutory employer status” matters. Id. at 490. Because the Shell/AbClean agreement intended to make Shell affiliates like Motiva statutory employers, they were classified as such.
In St. Angelo, the refinery owner was entitled to statutory employer status when *735 the refinery’s operator was authorized to and did enter into a contract on the owner’s behalf that designated a statutory employer. The same “broad presumption of statutory employer status,” 40 So.3d at 374, should apply to Excel in this case. Not only did CP, as operator, enter into a contract on Excel’s behalf as a co-owner, but CP is also a co-owner of the joint venture. See La. Civ. Code Ann. art. 2814 (2014) (“A partner is a mandatary of the partnership for all matters in the ordinary course of its business other than the alienation, lease, or encumbrance of its immov-ables.”).[2] CP’s execution of the contract inured to the benefit of, and could have been enforced by the co-owner Excel.
Wright argues, however, that because Exhibit G to the MSA explicitly references only CP as the statutory employer, Excel lacks the protection of this provision of the “written contract.” It is true that in the cases just cited, the non-signing party later deemed a statutory employer was either mentioned in the written services contract or listed as a subsidiary or affiliate in it. It is also true that where no written agreement existed denominating any party as the statutory employer, that status has been rejected. See Ernest v. Petroleum Serv. Corp., 2002-2482, p. 5-6 (La.App. 1 Cir. 11/19/03); 868 So.2d 96, 99.[3]
Although the MSA between Wyatt and CP makes no direct mention of Excel, nonetheless, a careful exegesis of the above-quoted MSA provisions supports including Excel in the scope of Exhibit G. First, the agreement’s titles are irrelevant to the contract’s interpretation, and Exhibit G is fully incorporated within the body of the Agreement. Second, the exclusions of liability and indemnities described in paragraph 12 explicitly adds those provisions found “elsewhere in this Agreement.” Such exclusions and indemnities, further, apply to Affiliates of the parties, a term that includes Excel as an “entity for which the- other party has operating or management responsibilities” pursuant to the joint venture. That Exhibit G amounts to an exclusion of liability or indemnity protection for the “Company” is evident because, were the “Company” not a statutory employer of Wyatt’s employees, it could be sued in tort, and as a result, issues of both liability and indemnity would arise between the “Company” and Wyatt. See Paragraph 12(b) (Wyatt indemnifies “Company” for, inter alia, death or injury to Wyatt’s employees, and “Company” has no responsibility to Wyatt for such injury or death). Finally, because the signatory “Company,” CP, achieves the benefit of Exhibit G as a statutory employer, its Affiliate Excel also benefits through Paragraph 12(f).
Whether viewed in terms of the inherent legal relationships among CP, Excel, and the joint venture and Wyatt, or proper inferences drawn from the MSA, we do not think the parties’ failure to name or require the signature of Excel in the MSA can overcome the broad presumption of *736 statutory employer status approved by Louisiana courts in St. Angelo and Johnson. The very purpose of CP and Excel in creating the joint venture was to give CP the exact operational authority it exercised on behalf of the joint venture when it signed the MSA with Wyatt. The parties’ written contract, in essence, “recognized” the parties to the joint venture as the statutory employers through their authorized agent. La.Rev.Stat. ANN. § 32:1061(A)(3). Though unpublished and non-precedential, our decision in Joseph v. Shell Chem., LP, 390 Fed.Appx. 401 (5th Cir.2010) is instructive on this point. There, Shell and Motiva contracted with Wyatt, which subcontracted part of the work to Atlantic, which directly employed the injured plaintiffs. Id. at 402. The contract between Shell, Motiva, and Wyatt designated Shell and Motiva statutory employers for Wyatt’s employees. Id. at 404. We rejected the plaintiffs’ argument that Shell and Wyatt were not also statutory employers of Atlantic’s employees because there was no signed agreement between Shell, Motiva, and Atlantic. Id.
The liberal attribution of statutory employer status by Louisiana courts in cases like this reflects economic realities and efScieney. Most joint venturers would expect the non-operating partner in a joint venture to enjoy the same statutory employer status the operating partner agrees to. Indeed, the indemnity and liability exclusion provisions of the MSA in the case at hand were intended to extend to Excel. Likewise, most contractors in Wyatt’s position would have no problem designating a non-operating partner as a statutory employer. Courts promote efficiency by reaching the decision that aligns with the parties’ rational expectations. See RobeRT CooteR & Thomas Ulen, Law & Eoonomics 292-94 (6th ed. 2012); c.f. Johnson, 128 So.3d at 490 (Defendants “contend that requiring a separate contract between large corporations by each affiliate and each contractor would be cost prohibitive and is not required by the LWCA.”).
The MSA in this case recognizes a statutory employer relationship for both CP and Excel. This creates a rebuttable presumption of a statutory employer relationship that Wright has not overcome.
Finally, Wright’s gross negligence claim is easily resolved. As mentioned, the LWCA makes workers’ compensation the exclusive remedy for employees injured on the job. La Stat. Ann. § 23:1032(A)(l)(a) (2014). The only exception is for intentional acts. Id. “[Ajnything less than intentional, whether it be gross negligence or violation of a safety rule, remains in workers’ compensation.” Perret v. Cytec Inds., Inc., 04-745, p. 6 (La. App. 5 Cir. 11/30/2004); 889 So.2d 1121, 1125. Thus, “gross negligence does not meet the intentional act requirement,” Reeves v. Structural Pres. Sys., 98-1795, p. 8 (La. 3/12/99); 731 So.2d 208, 212, and Wright’s gross negligence allegation is subsumed within workers’ compensation. Recognizing this, Wright attempts in his reply brief to reframe (or replead) his gross negligence claim into an intentional act allegation. But this court will not consider issues raised for the first time in a reply brief. See Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp., 346 F.3d 530, 536 (5th Cir.2003). The district court was correct to hold that even if the Defendants were grossly negligent, Wright’s sole remedy is workers’ compensation, and he has waived any intentional act allegation.
For these reasons, the judgment of the district court is AFFIRMED.

. Conoco, Inc. was later merged into defendant ConocoPhillips Company.

. Joint ventures and partnerships are treated analogously for the purposes of the LWCA's exclusive remedy provisions. See Buckbee v. AWECO, Inc., 418 So.2d 698, 702 (La.Ct.App.1982).

. The partial dissent, citing Ernest, asserts ‘‘[t]he only intermediate state court that has considered such a situation [presented here] has rejected statutory employer status.” Diss. Op. at 737. Ernest has little bearing on the situation presented by this case. In Ernest, the contract between the principal and the contractor made no designation of statutory employer status at all, so it was clear the defendant "failed to demonstrate the existence of a written contract providing for the statutory relationship.” 868 So.2d at 99. Here, there is an express designation of statutory employer status, but the issue is which parties it covers.