# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 11, 2016

Lyle W. Cayce
Clerk

No. 15-30743

CAROL PETERSON, Individually; RICHARD PETERSON, Individually,

     Plaintiffs - Appellants

v.

C. R. BARD, INCORPORATED, a New Jersey Corporation; BARD
PERIPHERAL VASCULAR, INCORPORATED, a subsidiary and/or division
of defendant C.R. Bard, Incorporated, an Arizona Corporation,

     Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:13-CV-528

Before STEWART, Chief Judge, and JONES and DENNIS, Circuit Judges.

PER CURIAM:*

The issue in this appeal is when prescription commenced. Carol Peterson ("Peterson") had an inferior vena cava filter ("IVC filter" or "filter") manufactured by the defendants (collectively "Bard") surgically implanted in her bloodstream in 2008. The filter prevents blood clots in the legs from being transferred through the bloodstream to the brain/heart. On July 26, 2012 she

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30743

was admitted to the hospital after experiencing consistent sharp pain in her right back and flank for several days, along with intermittent pain that began in 2008.  Testing revealed struts in the filter were poking through the wall of her blood vessel.  This was reflected in her hospital discharge paperwork, which also indicates that she agreed to a conservative treatment option for the problem.  She was discharged on July 31, 2012.  She claims, however, that she was not aware of the problem with the filter until a follow-up appointment with her doctor on August 14, 2012.  She brought suit on August 13, 2013, alleging numerous claims under the Louisiana Products Liability Act ("LPLA").  Her husband brought a loss of consortium claim.  All claims are governed by a one year period of prescription.  *See* LA. CIV. CODE art. 3492.

The district court granted summary judgment in favor of Bard because Peterson knew or should have known about the problem with the filter by July 31, 2012 at the latest.  Four of her doctors testified that they either remember discussing the filter problem with her while she was hospitalized or that it would be within their standard operating procedure to do so.  Her treatment and discharge paperwork indicated the filter problem and that she had agreed to a course of treatment for it.  Testimony from her husband indicated that he remembered talking with one of the doctors about the filter problem while she was hospitalized.  The only contrary evidence is Peterson's own testimony that she does not remember being told about the problem until her follow up visit on August 14, 2012.  She argued in the district court (and on appeal) that her testimony creates a genuine issue of material fact for the jury.

"This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court."  *Wright v. Excel Paralubes*, 807 F.3d 730, 732 (5th Cir. 2015).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

2

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "This court considers evidence in the record in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party." *Uptown Grill, LLC v. Shwartz*, 817 F.3d 251, 256 (5th Cir. 2016). However, "[w]hen the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 106 S. Ct. 1348, 1356 (1986). "If the evidence is merely colorable . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986) (internal citations omitted). Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288, 88 S. Ct. 1575, 1592 (1968)).

Peterson's principal argument is that she did not learn of the problem with her IVC filter until she visited her doctor on August 14, 2012 (*i.e.*, not during her hospitalization). The district court rejected this contention, and we agree. On the basis of this record including the discharge prescription for "conservative treatment"—an alternative to surgical removal of the IVC filter—it strains the limits of reason to accept Peterson's claim that she was not told about the failure of her IVC filter during the hospitalization. Her testimony may be "colorable," but that is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 249–50.[1] Peterson, as the non-movant, has

---

[1] Louisiana law is not to the contrary. *See Am. Zurich Ins. Co. v. Caterpillar, Inc.*, 2012-270 p. 2-4 (La. App. 3 Cir. 10/3/2012); 99 So.3d 739, 741-42 (no need to speculate on when party obtained constructive knowledge of facts sufficient to commence running of prescriptive period when evidence in record established when party had actual knowledge).

not carried her burden to offer evidence that creates a genuine issue of material fact.[2] She has no evidence to dispute the doctors' testimony that they told her about the IVC filter problem; her lack of memory by itself is insufficient. *See Hemphill v. State Farm Mut. Auto Ins. Co.*, 805 F.3d 535, 541 (5th Cir. 2015) ("Lack of memory by itself is insufficient to create a genuine issue of material fact."). The testimony of Peterson's husband is irrelevant to our conclusion

Peterson contends that the doctrine of *contra non valentum*, which tolls the running of the prescriptive period until the plaintiff knew or reasonably should have known her injuries were caused by a defendant's wrongful act, applies here. *See Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992). To the extent she contends that she did not know and could not have reasonably known about her injuries until August 14, 2012 (or later), we have rejected that argument. She also urges the "specific defendant" doctrine, a subspecies of the "discovery rule," should toll prescription until she discovered which company actually manufactured her IVC. This argument is misguided. The district court correctly held that the discovery rule only applies when there are multiple possible defendants or causes of an injury. *See Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 894 (5th Cir. 2010) (Specific defendant rule applied because "no one knew the cause [of broken bolts]. It could have been continued overtorquing, faulty manufacture, or improper bolt substitution. Each problem pointed to a different defendant."); *see also Jordan v. Emp. Transfer Corp.*, 509 So.2d 420, 423-24 (La. 1987). Here, the injuries are only alleged to have a single cause: the IVC filter. Although several

---

[2] *C.f. In re Brewer*, 2005-0666 p. 4 (La. App. 1 Cir. 5/5/06); 934 So.2d 823, 826 ("Ordinarily, the burden of proof is on the party pleading prescription, however, if on the face of the petition it appears prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period.").

No. 15-30743

companies manufacture such filters, Peterson could have easily discovered that hers was manufactured by Bard. *See id.* at 423.   **AFFIRMED.**