# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 18, 2022

Lyle W. Cayce
Clerk

No. 21-30435

Amy Rolls, *on behalf of her minor child A. R.*,

*Plaintiff—Appellant*,

*versus*

Packaging Corporation of America Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:18-CV-188

Before Jolly, Smith, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

On the heels of her ex-husband's tragic death in a containerboard mill explosion, the plaintiff brought a wrongful death and survival action against the mill's operator in Louisiana state court. The defendants removed the case to federal court on grounds of improper joinder and diversity jurisdiction. After denying a motion to remand, the district court granted successive motions for summary judgment that disposed of the plaintiff's claims. The plaintiff now appeals the district court's rulings on the motion to remand and the motions for summary judgment. We AFFIRM.

No. 21-30435

I.

On February 8, 2017, an explosion killed several workmen at a Louisiana containerboard mill operated by Defendant-Appellee Packaging Corporation of America ("PCA"). The explosion was massive and gruesome. While its precise cause is disputed, the plaintiff Amy Rolls asserts that a 30-foot-by-24-foot foul condensate tank[1] was flung approximately 375 feet over a nearby six-story building when a cloud of highly flammable turpentine vapor escaped the tank and was ignited by welders doing "hot work"[2] in the tank's vicinity.

One such welder was William Rolls ("Mr. Rolls"), an employee of Elite Specialty Welding LLC ("Elite") performing annual repairs at the mill under a purchase order issued to Elite by PCA. In January 2018, Mr. Rolls' ex-wife ("Ms. Rolls") brought a wrongful death suit on behalf of their minor daughter in Louisiana state court against PCA and PCA employee Timothy Wohlers, a supervisor alleged to have had specific responsibility for the safe operation of the tank at issue. PCA and Wohlers (collectively, the "defendants") removed the case to federal court on the basis of diversity jurisdiction. Acknowledging that Wohlers shared Ms. Rolls' Louisiana citizenship, the defendants asserted that Wohlers' nondiversity should be disregarded for jurisdictional purposes due to improper joinder.

Ms. Rolls moved to remand. After considering the complaint and dueling declarations filed by the parties, a magistrate judge determined that Ms. Rolls had no possibility of recovery from Wohlers and recommended

---

[1] A foul condensate tank is a storage tank in which various flammable byproducts of the papermaking process are collected.

[2] As defined by OSHA, "Hot work" is "riveting, welding, flame cutting, or other fire or spark-producing operation." *See* Welding, Cutting, and Heating (Hot Work), 29 C.F.R. § 1917.152(a).

that her motion to remand be denied accordingly.[3] The district court adopted the magistrate judge's report and recommendation over Ms. Rolls' objection, denying Ms. Rolls' motion to remand and dismissing her claims against Wohlers without prejudice.

With federal jurisdiction conferred, PCA moved for summary judgment. PCA contended that the purchase order it issued to Elite rendered PCA Mr. Rolls' "statutory employer" and barred Ms. Rolls' claims under the exclusive remedy provision of the Louisiana Workers' Compensation Act (LWCA), which makes employers and "statutory employers" liable for workers' compensation to employees injured in the course and scope of their employment but in turn makes that remedy exclusive. *See* La. R.S. §§ 23:1031(A), 23:1032. Ms. Rolls opposed PCA's motion on two core grounds. First, she asserted that the purchase order at issue did not install PCA as Mr. Rolls' statutory employer. Alternatively, she maintained that even if the purchase order *did* make PCA Mr. Rolls' statutory employer, the LWCA's exclusive remedy provision was nonetheless inapplicable under the Act's intentional act exception, which was allegedly triggered by Wohlers' refusal to take precautions that would have prevented the explosion.

The district court granted PCA's motion in piecemeal fashion. After initially granting PCA's motion in full and dismissing Ms. Rolls' claims with prejudice, the district court altered its judgment and reopened the case for the limited purpose of determining the applicability of the intentional act exception through additional discovery and briefing. After four months of

---

[3] The magistrate judge also recommended denial of Ms. Rolls' separate motion for leave to file an amended complaint that would have otherwise impeded diversity jurisdiction by joining a Louisiana LLC that allegedly manufactured the exploded tank. The district court agreed with the magistrate judge and denied leave to amend, thereby preserving diversity jurisdiction. Ms. Rolls does not challenge this ruling on appeal.

additional proceedings, PCA renewed its motion for summary judgment. The district court granted the renewed motion and dismissed Ms. Rolls' claims with prejudice.

Ms. Rolls now appeals the district court's denial of her motion to remand and grants of PCA's motions for summary judgment. That presents the panel with two issues. As an initial matter, we must determine whether the district court was correct in finding improper joinder and diversity jurisdiction—and whether it abused its discretion by piercing the pleadings in doing so. Next, we must decide de novo whether the record establishes that PCA was the statutory employer of Mr. Rolls such that the exclusive remedy provision of the LWCA bars Ms. Rolls' survival action. We consider both issues in turn and, ultimately, AFFIRM.

## II.

As a court of limited jurisdiction, we address Ms. Rolls' jurisdictional challenge at the outset. "A determination that a party is improperly joined and the denial of a motion to remand to state court are questions of law reviewed *de novo.*" *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 (5th Cir. 2005)). "However, this court reviews a district court's procedure for determining improper joinder only for abuse of discretion." *Id.* (citing *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309–10 (5th Cir. 2005)).

Because it is undisputed that Ms. Rolls and PCA are diverse, that the amount in controversy exceeds $75,000, and that PCA is not a citizen of the forum state of Louisiana, removal jurisdiction on grounds of diversity indeed obtains in this case if nondiverse defendant Wohlers was improperly joined as PCA contends. *See* 28 U.S.C. §§ 1332, 1441.

"[T]he test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against

[the] in-state defendant" in question. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Thus, in reviewing the district court's finding of improper joinder and resulting denial of Ms. Rolls' motion to remand, we must determine whether Ms. Rolls has any possibility of recovery against Wohlers. If not, Wohlers' joinder as a defendant does not destroy diversity jurisdiction.

## A.

Before we can turn to that inquiry, however, we must address a threshold contention Ms. Rolls raises on appeal: namely, that the district court's *procedure* for assessing the propriety of Wohlers' joinder itself constituted an abuse of discretion warranting reversal. On this procedural point, Ms. Rolls argues that the district court "abused its discretion in two ways." First, she contends that the district court "improperly 'pierced the pleadings.'" Second, she maintains that the district court "converted a 12(b)(6)-type analysis into weighing of evidence as [a] trier of fact would, ultimately concluding that the complaint's evidence was 'not enough to overcome Wohlers' [contrary] representations.'"

As explained below, both arguments are without merit.

### 1. Piercing the Pleadings

Ms. Rolls first takes issue with the district court's decision to "pierce the pleadings" by examining other facts turned up in discovery and assessing the effect of such facts on Ms. Rolls' actual prospects of recovery. With important limitations, we've recognized that district courts are at liberty to do just that. Indeed, in *Smallwood v. Illinois Central Railroad Co.*, we held that when "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," "the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry . . . to identify the presence of discrete and undisputed facts that would preclude

[the] plaintiff's recovery against the in-state defendant" at issue. *Smallwood*, 385 F.3d at 573–74.

Here, the district court exercised this discretion in finding that "[a]t a minimum, [Ms. Rolls'] complaint omitted discrete facts pertaining to Wohlers' presence at the time of the explosion and his knowledge of, as well as his responsibility for the welding work" that allegedly ignited gases emanating from the tank that exploded. Crediting an affidavit that Wohlers submitted in response to Ms. Rolls' motion, the district court specifically found that "Wohlers had no knowledge of the welding being done on the day of the explosion, [] had no involvement in the permitting process, [] was not present at the worksite at the time of the explosion, and thus [could not and should not] have been aware of the risks" to which he had allegedly exposed Mr. Rolls. All of these facts undermine any notion that Wohlers bore personal blame for the explosion, and under *Smallwood*, all are the kind of discrete and uncontradicted facts that are proper subjects of pleadings-piercing summary inquiry. Taken together, these facts indeed preclude Ms. Rolls' recovery from Wohlers,[4] and the district court's refusal to turn a blind eye to them was no abuse of discretion.

## 2. Weighing the Evidence

Ms. Rolls' second argument—that the district court improperly weighed the evidence in considering her motion to remand—is also unavailing. Quite the opposite, the district court neatly complied with Fifth

---

[4] This is because—as detailed below—applicable Louisiana caselaw requires a plaintiff in Ms. Rolls' position to show personal fault on the part of a defendant in Wohlers' position. *See Canter v. Koehring Co.*, 283 So. 2d 716, 721 (La. 1973). As the magistrate judge observed here, Wohlers "was unaware of and did not authorize the work scheduled on February 8, 2017, when he was not even at the facility," and was not otherwise aware "that the tank should have been drained and cleaned prior to the explosion when, as he states in his own declaration, it was not due for cleaning."

Circuit precedent requiring pleadings-piercing district courts to confine their review to a "summary inquiry" that considers only "summary judgment-type evidence" and resolve factual and legal uncertainties in favor of the plaintiff seeking remand. *Smallwood*, 385 F.3d at 573–74; *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003). Indeed, as PCA correctly notes in its brief, "the facts that [the district court] found to be critical in determining whether Wohlers was improperly joined" were not contradicted by anything in the record at the time of the district court's ruling on the motion to remand. As a result, the district court did not *weigh* the evidence at all, but merely considered the textbook "summary judgment-type evidence" before it at the time of its decision—to wit, statements in one declaration that were not contravened by statements in an opposing declaration.

We reject Ms. Rolls' attempt to shoehorn into this appeal "[e]vidence taken later in the case" that supposedly undercuts Wohlers' declaration. For one, Ms. Rolls never presented such evidence to the district court in connection with either her motion to remand or her ongoing objection to federal subject matter jurisdiction, so her arguments in this regard are forfeited and unreviewable. *See, e.g.*, *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) ("Under this Circuit's general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary circumstances,'" which exist only "when the issue involved is a pure question of law and a miscarriage of justice would result from [a] failure to consider it." (citation omitted)). As PCA observes, Ms. Rolls had several options for preserving these arguments below. She could have, for example, (1) renewed her motion to remand upon the discovery of the "later-developed" evidence she now points to on appeal, (2) requested reconsideration of her initial motion to remand in light of such evidence, or even (3) sought leave to amend her complaint to add new and improved claims against Wohlers, whose dismissal

from the case was merely without prejudice. Instead, she chose to press on in a district court given no reason to doubt its subject matter jurisdiction. Because our post hoc consideration of evidence not presented to the district court "until after an adverse ruling on the merits [would] condone a circuitous trip back to state court for a double dip at success in this action," we reject this alternative procedural objection as well and proceed to the merits of Ms. Rolls' motion to remand. *See Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990).

### B.

We now arrive at the heart of the jurisdictional matter Ms. Rolls raises on appeal: whether Ms. Rolls had a plausible claim against Wohlers such that Wohlers could be properly joined to defeat diversity jurisdiction.

In this regard, both sides agree that *Canter v. Koehring Co.*, 283 So. 2d 716 (La. 1973), supplies the relevant framework for assessing Ms. Rolls' claim against Wohlers. Under *Canter*, a plaintiff can hold a management-level employee personally liable for his injury when the following four elements are met:

- First, the employer [PCA] must owe a duty of care to the plaintiff [Mr. Rolls], the breach of which caused the injury at issue [Mr. Rolls' death].

- Second, the employer [PCA] must have delegated that duty to the employee at issue [Wohlers].

- Third, the employee at issue [Wohlers] must have breached the duty through his own personal fault.

- And fourth, the employee's breach must have been more than a simple breach of a "general administrative responsibility," but must

8

instead stem from the breach of a duty the employee owed the plaintiff personally that was not properly delegated to another employee.

*Id.* at 721.

The district court found the third element lacking here. At bottom, it held that Wohlers could not be deemed at *personal* fault for the explosion because his declaration showed that he "had no knowledge of the welding being done on the day of the explosion, [] had no involvement in the permitting process, [] was not present at the worksite at the time of the explosion, and thus [could not and should not] have been aware of the risks involved." If this array of uncontradicted facts weren't enough, Wohlers' lack of personal fault for Mr. Rolls' death was further underscored by the absence of "allegations that welding was a regular occurrence or something that Wohlers should have anticipated," and by the fact that "Wohlers had no reason to know of the hazardous conditions created by the welding work performed over the tank."

On appeal, Ms. Rolls continues to assert just the opposite. In her opening brief, she reiterates allegations that the district court specifically rejected in light of Wohlers' competing declaration—namely, that "Wohlers was directly responsible for the operation, maintenance, and safety of the recovery tank that exploded," and that he "knowingly created the dangerous condition that caused the tank to explode" by refusing to have the tank purged of dangerous gases because it would be too expensive to do so. These conclusory allegations—recycled and cherry-picked from the complaint and the barebones declaration of plaintiff's witness, Stephanie Partridge[5]—may

---

[5] In glossing over Partridge's statement—in the *same sentence*—that Wohlers informed her that the tank "was not due to be cleaned" in favor of Ms. Rolls' more sinister version of events (in which Wohlers declined to have the tank purged because it would have been costly to do so), Ms. Rolls' opening brief borders on disingenuousness. Ms. Rolls'

show that Wohlers had some abstract responsibility for the tank, but fail to show that Wohlers bears *personal* blame for Mr. Rolls' death as the third prong of *Canter* requires, particularly when juxtaposed against Wohlers' declaration that he had no knowledge or reason to know of the welding that sparked the explosion.

When an injured employee does little more than "parse[] employee job descriptions" to "lay a veneer of specificity over what are, in essence, generalized claims" that the employee-defendant failed to prevent the accident, he fails to meet *Canter*'s high bar for imposing personal liability on a management-level employee. *Anderson v. Ga. Gulf Lake Charles, LLC*, 342 F. App'x 911, 918 (5th Cir. 2009) (per curiam); *see also Guillory*, 434 F.3d at 313 (nondiverse employee-defendant's "self-serving [but uncontradicted] testimony . . . that he had no responsibility for safety measures relating to . . . plant explosion" supported finding of improper joinder).

Accordingly, the district court was correct to pierce the pleadings to ferret out glaring legal deficiencies in Ms. Rolls' claims against the only defendant precluding diversity jurisdiction, and the district court's consequent finding of improper joinder and denial of Ms. Rolls' motion to remand were likewise correct.

## III.

Jurisdiction settled, we now turn to the merits of Ms. Rolls' remaining claims against PCA. In a pair of orders, the district court granted PCA summary judgment and dismissed these claims with prejudice. We review the district court's grant of summary judgment de novo, and agree. *See, e.g.*,

---

obfuscation of this aspect of her own witness' declaration is telling; indeed, it is hard to see how Wohlers' decision not to have the tank cleaned before it was due for cleaning could be all that unreasonable.

*Sanchez v. Smart Fabricators of Tex., L.L.C.*, 997 F.3d 564, 568 (5th Cir. 2021) (en banc).

The LWCA enacts a give-and-take between employers and employees. On the one hand, the Act furnishes employees a right to workers' compensation for personal injuries sustained "in the course of . . . employment." La. R.S. § 23:1031(A) (Employee's right of action). In exchange, the Act makes workers' compensation an employee's exclusive remedy against his employer. *See id.* § 1032(A)(1)(a) (Exclusiveness of rights and remedies).

The Act's exclusive remedy provision is specifically at issue here. In relevant part, it provides that "[e]xcept for intentional acts . . . the rights and remedies herein granted to an employee or his dependent on account of an injury . . . shall be exclusive of all other rights, remedies, and claims for damages." *Id.* The statute further provides that "[t]his exclusive remedy is exclusive of all claims, including any claims that might arise against [an] employer, or any principal." *Id.* § 1032(A)(1)(b); *see also id.* § 1061(A)(1) (extending the "exclusive remedy protections of R.S. 23:1032" and the corresponding obligation for workers' compensation to "the principal, as a statutory employer"). Importantly in this case, when a principal "enter[s] into a written contract 'recognizing' it as the statutory employer of [a contractor's] employees," a rebuttable presumption of statutory employer status arises "that may be overcome only when the [injured] employee shows that the work 'is not an integral part of or essential to the ability of the principal to generate that [employee's] goods, products, or services.'" *Wright v. Excel Paralubes*, 807 F.3d 730, 732–33 (5th Cir. 2015) (quoting La. R.S. § 23:1061(A)(3)).

In pursuing summary judgment here, PCA maintained that it was Mr. Rolls' statutory employer at the time of the explosion and was accordingly

shielded from Ms. Rolls' wrongful death claims by the LWCA's exclusive remedy provision. The district court correctly agreed. Indeed, as the record makes clear, the repair work Mr. Rolls was engaged in before the explosion was the subject of a written contract entitled "Purchase Order # 217370." Issued to Mr. Rolls' direct employer Elite Specialty Welding LLC, Purchase Order # 217370 engaged Elite to "[p]rovide maintenance assistance to repair piping to the Clean Condensate tank in the Pulp Mill during the Big Line 2017 Annual Outage" at a price of "3,494.00." In clear language appearing directly beside a signature block executed by a PCA representative, the order states that "This P.O. is issued subject to PCA's Terms and Conditions[,] http://www.packagingcorp.com/doing-business-with-pca." That web page housed a term and condition that specifically conferred "statutory employer" status on PCA. In full, the condition provided that:

> For Louisiana Work Only, the following shall apply: The Louisiana Legislature passed legislation on June 5, 1997, Act 315, which requires contracts to recite in writing the "statutory employer" status of the parties hereto. The Governor signed the legislation on June 17, 1997, and it became effective on that date (the "Act"). PCA (as principal employer under the Act) and the Seller (as direct employer) mutually agree that it is their intention to recognize PCA as the statutory employer of the Seller's employees under the Act while Seller's employees are providing work and/or services to PCA under this Agreement. The parties agree that PCA is a statutory employer only for purposes of the above-referenced Act.

Ms. Rolls attempts to wriggle out of the purchase order's obvious upshot by noting that the order was not *signed* by Elite, but we observed in a recent unpublished decision that "the plain text of the [LWCA] does not require a *signed* writing," but instead "just requires a 'written contract.'" *Morris v. Graphic Packaging Int'l, L.L.C.*, 829 F. App'x 43, 46 (5th Cir. 2020) (per curiam) (emphasis added) (quoting La. R.S. § 23:1061(A)(3)). The

district court here correctly found a "written contract" between PCA and Elite, holding specifically that Elite accepted the purchase order—and its attendant terms and conditions—through its performance of the work set forth therein. Under Louisiana law, "acceptance can [indeed] be through performance," and that is precisely what occurred here: PCA issued Elite a written purchase order, and Elite took action—namely, undertaking the work spelled out in the order—that clearly indicated consent. *See id.* (citing LA. CIV. CODE ANN. art. 1927 ("Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.")).

It makes no difference that pertinent terms and conditions were not set forth explicitly in the purchase order but instead left to appear at a web page hyperlinked in the order. Indeed, in *One Beacon Insurance Co. v. Crowley Marine Services, Inc.*, this court adopted the "general contract principle[]" that "where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together." 648 F.3d 258, 267 (5th Cir. 2011). As *One Beacon* further confirms, "[t]erms incorporated by reference will be valid so long as it is 'clear that the parties to the agreement had knowledge of and assented to the incorporated terms,'" which is "reasonable where, under the particular facts of the case, '[a] reasonably prudent person should have seen' them." *Id.* at 268 (alteration in original) (first quoting 11 WILLISTON ON CONTRACTS § 30:25 (4th ed. 1999); then quoting *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir. 1986)). "[Seeing] no reason to deviate from these principles where . . . the terms to be incorporated are contained on a party's website," the *One Beacon* panel held that the foregoing principles apply with equal force in contracts with "a nexus to the internet."

*See id.* at 268–69. Thus, whether incorporated terms appear on paper or on the web, one "chief consideration" governs just the same—namely, "whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms." *Id.* at 269.

This case fits that billing. As the district court observed, the purchase order at issue here "contains clear language, visible and conspicuous to the naked eye, indicating that the order is 'issued subject to PCA's terms and conditions'" at a web address appearing immediately thereafter. Equally clear language at that web address gave Elite "reasonable notice of . . . terms" making PCA the statutory employer of Elite employees performing work under the purchase order, and Elite "manifested assent to those terms" by undertaking such work. *Cf. One Beacon*, 648 F.3d at 269. As a result, PCA and Elite had a valid contract[6] under our best interpretation of Louisiana contract law,[7] and two dispositive conclusions immediately flow from that

---

[6] Ms. Rolls' counterarguments don't hold sway. Ms. Rolls first argues that the pertinent documents described above "at best . . . create an issue of fact for the jury." But this conclusory argument is rejected, as the documents are paradigmatic summary judgment-type evidence and well within the scope of our de novo review. After making this blank contention and responding with no countervailing record evidence of her own, Ms. Rolls airs her central grievance with the purchase order that sinks her case against PCA: the fact that the order was unsigned by any party other than PCA and was therefore not legally "perfected." Not so. For all their creativity and vigor, Ms. Rolls' contentions in this regard all boil down to a core notion we debunked above—namely, that the purchase order and the terms and conditions incorporated therein did not create a binding contract. Because those documents *did* create a binding contract, Ms. Rolls' policy arguments and dubious citations to precedent are inapposite and unavailing.

[7] Louisiana substantive law applies in this diversity case. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). While our court in *One Beacon* recognized the foregoing contract principles in a case involving federal maritime law, we have no reason to doubt that Louisiana courts would recognize the same principles in cases involving—as here—Louisiana law. *See, e.g.*, *Russellville Steel Co. v. A & R Excavating, Inc.*, 624 So. 2d 11, 13 (La. Ct. App. 1993) ("As a general rule of contract law, separate documents may be incorporated into a contract by attachment or reference thereto.").

reality: *first*, that PCA was indeed Mr. Rolls' statutory employer when the explosion occurred,[8] *and second*, that PCA may avail itself of the LWCA's exclusive remedy protections accordingly. *See* La. R.S. §§ 23:1032, 1061.

In a final attempt to stave off dismissal, Ms. Rolls argues that the application of the exclusive remedy provision is otherwise barred by the LWCA's intentional act exception. In essence, Ms. Rolls contends that Wohlers' decision not to drain the ill-fated foul condensate tank amounted to an intentional choice to place Mr. Rolls in grave danger. This argument, too, falls flat.

It is true that the LWCA's exclusive remedy provision begins with an explicit carve-out "for intentional acts." *See id.* § 1032(A)(1)(a) ("*Except for intentional acts* . . . the rights and remedies herein granted to an employee or his dependent on account of an injury . . . shall be exclusive of all other rights, remedies, and claims for damages . . . ." (emphasis added)). But the plaintiff bears the burden of showing a qualifying intentional act, and that burden is steep. *See Million v. Exxon Mobil Corp./Exxon Chem. Co.*, 2019 WL 3210079, at *4 (M.D. La. July 16, 2019) (collecting state and federal cases alternatively describing a plaintiff's burden in availing himself of the intentional act exception as "exacting," "narrow[]," and "extremely high"). In light of this stringency, "[b]oth federal courts and Louisiana courts agree that there must be a substantial *certainty* that a party will suffer harm to prevail on a claim of intentional tort." *Wilson v. Kirby Corp.*, 2012 WL 1565415, at *2 (E.D. La. May 1, 2012) (emphasis added). Thus, "[e]ven knowledge of a *high degree of*

---

[8] For good reason, Ms. Rolls appears to concede an inability to rebut PCA's presumption of statutory-employer status by asserting that Mr. Rolls' work was "not an integral part of or essential to" PCA's ability to do the hot work at issue, instead arguing that no presumption arose in the first place due to the lack of a binding contract. *Cf. Wright*, 807 F.3d at 733 (quoting La. R.S. § 23:1061(A)(3)). As previously explained, this contention is meritless.

*probability* that injury *will* occur is insufficient to establish that the employer was substantially certain that injury would occur so as to impute intent to him within the intentional tort exception to the [LWCA's] exclusive remedy provisions." *Id.* (emphasis added).

Ms. Rolls clearly fails to meet this burden here. Indeed, even when ascribing the best possible light to Ms. Rolls' strained theory of the case,[9] Wohlers' decision not to drain the tank—and to supposedly endanger workmen performing work of which he was not even aware—remains a far cry from "*consciously* subject[ing] an employee to a hazardous or defective work environment where injury to the employee is *nearly inevitable*" as the substantially-certain test demands. *See Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1327 (5th Cir. 1996). As discussed at length with regard to the motion to remand,[10] the district court had considerable summary judgment evidence that Wohlers was not nearly so malevolent.

*    *    *

In sum, the district court was correct to dismiss Ms. Rolls' diversity jurisdiction–defying claims against Wohlers and exclusive remedy–defying claims against PCA. For better or worse, this workplace tragedy falls within the ambit of Louisiana's workers' compensation scheme.

---

[9] Which is to assume, among other things, that Wohlers made a conscious decision to defy experience and reason in pursuit of a financial motive to save $100,000 by not draining the tank before the commencement of hot work that was substantially certain to result in death and destruction. The record does not support this notion.

[10] Ms. Rolls' more recently discovered evidence on this point does not change matters. Because that evidence corroborates Wohlers' claim that he did not know that hot work would be performed near the tank on the day of the explosion, Wohlers cannot be deemed to have been *substantially certain* that the tank would explode as required to trigger the intentional act exception.

No. 21-30435

AFFIRMED.